Good morning, your honors. My name is Lindsay Holm. I represent the appellant Catherine Mays. One of the promises of Title VII is that a woman will not have to forgo her dignity in order to show up at work every day and to earn a living. After working at a job she liked for seven years, nurse Catherine Mays was sexually assaulted by one of the King County jail inmates, Larry Jackson. After the assault, Ms. Mays was unable to return to work on a regular basis. I think we factually know, you know, we're well up to speed on that because we spend a lot of time on that. I have a question in terms of on Officer Cirsania's report that the court denied admissibility on that. Is that crucial to your being able to defeat summary judgment? If that is not admissible, if, you know, if say we were to agree that it's not admissible, then do you have a case? Well, I certainly think the district court thought it was critical. Well, but I'm asking you, okay, you know, from this standpoint because we're going to have to rule on the admissibility and if we were to agree with the district court on that, do you have a prima facie case? I think we do, Your Honor, but I do think the officer's testimony and his report is critical because it shows both knowledge and that it corroborates Ms. Mays' concern that her work environment wasn't safe and that she wasn't protected by her employer from future harassment and from harm. So, I think it's critical. I think it was critical to the district court's analysis and that it said that because Ms. Mays and Officer Cirsania's testimony was hearsay, it would grant summary judgment. Is this case at all different because it takes place in a penal setting from the standpoint, you know, I mean, clearly I'm not saying that, you know, that Title VII doesn't apply, but let, you know, say if I as an employer, if one of my employees were behaving in a certain way, I, you know, then say either don't do it or you're out of here because I'm not going to take that risk. They can't just say, oh, don't do that. We're going to let you go out of jail. I mean, you know, and the population of the people that we're having, you know, we're talking about controlling inmates. We're not talking about, you know, controlling other employees. So, you know, whether or if you want to, I mean, obviously there's enough to put them in jail. Either they're sentenced in jail, you know, they're doing time or, you know, they've been convicted of certain things or they're pending serious charges. So, you're not dealing with kind of the same type of thing. And so, there is an expectation on some level, any of us that have done criminal law and had to go visit the jails know that it's not uncommon for some inmates to make comments to women or for certain things, you know, that certain things occur. So, it's really about the fact that it occurred. It's really about what they did in response to it, right? I mean, they can't be held to a standard that this population is never going to misbehave. Yeah, I think Ms. Mays acknowledged she'd been spit at, cussed at 100 times. She treated Gary Bridgeway, the Green River serial killer. She was a tough woman, but being groped is an entirely separate issue. And when she knows she's not the only victim of Larry Jackson's conduct. Okay, but they can't fire her, fire, I mean, they can't fire the groper and let him out. So, what they did do is, I mean, there were disciplinary proceedings, they instituted criminal charges and all of that. So, why isn't that enough? It was when she was the final victim in a series of victims. What wasn't enough is that the first time they knew of his harassing conduct, they instituted five days of disciplinary deadlock, which is really taking away his lack of access to the commissary. It doesn't do anything to protect the women. The next time he harasses the woman. What could have happened? What should have happened the first time, in your view? Well, what they did ultimately, which was to have one-on-one escort of the nurses into the tank, which is a corrections officer, one-on-one with the nurse so that she's protected, so that she doesn't have to endure the loss of dignity, the exposure to his naked body, the groping, the lewd and offensive conduct. It seems to me the district court relied primarily upon what he thought was the adequacy of the county's response to this problem. I don't know exactly how he came out as to whether this was an environment, whether the environment was threatening or not, but he made his decision primarily on the response, I think. So that seems to me to be the heart of the matter. Is Brooks an issue for you? I don't think it's an issue for us, Your Honor. I think the county makes much of Brooks, citing it as the single groping incident and tries to force the facts of this case into Brooks. But Brooks, we have an employer responding the first time it knows, instituting an investigation right away, putting that individual, the perpetrator, on administrative leave, and then firing the individual. And from there, the court says this employee, the plaintiff, could not possibly feel like her employer tolerates such conduct. Does Brooks, though, because we, I mean, Brooks is a Ninth Circuit case, so we've got to, you know, like it or not, we've got to deal with it. Does it stand for the proposition that your client may not be able to satisfy the objective prong of hostile work environment by introducing evidence of harassment directed towards other employees of which she was unaware? I mean, because hostile work environment, it seems to, I'm not sure I necessarily agree with that, but it seems to have that proposition included. It does, and I would submit that that's dicta in that case, and subsequent to that, we have the Dominguez-Curry decision, where the district court says it's persuasive that there are other victims of harassment, and in that case, the plaintiff overheard many of the comments, but the Ninth Circuit doesn't say all of the comments. And so I think we have that decision subsequent to Brooks. We also have persuasive authority of the Second Circuit saying certainly we're talking about an environment, and that's what Title VII is all about, is taking away harassment in the environment, and that should be the focus. But how can it be hostile to you if you're unaware of the prior incidents? Well, in this instance, Ms. Mays goes back to work the very next day after the assault, and she hears that she's not the only victim. Now, we're not suggesting that those statements from those nurses should be admitted for the truth of the matter, certainly we've conceded that that would be hearsay, but her subjective belief that she's not protected by her employer, those statements would be admissible to that, for that purpose. Is the hostile work environment, though, is it a freeze frame in time? Is the hostile work environment, are we determining it at the moment that she's groped, or? Right, and I think that's the mistake in Brooks, if I can say that in terms of its dicta, is that if we had judged whether the hostile work environment is hostile at the moment a victim is attacked, I think we're missing the point. We should be looking to the overall environment, and there's instructive language and little on that. She didn't know the moment she was raped that there were other victims, there weren't any other victims. We look after the fact to what the employer's response was to that rape, and the fact that they allowed it to permeate her work experience. Well, it's just kind of an, it's, I mean, I agree generally a lot of hostile work environment, you have it over a period of time, and people will say, well, this happened, that happened, or, you know, all of, you know, these things continue to happen, but generally when you allege one incident, you're framing it in terms of that one incident. That's what creates the hostile work environment, and Brooks seems to say the fact, if you didn't know of other people, that doesn't go into the... Right, and in Brooks, like I mentioned earlier, the employer immediately responds and takes effective and prompt action, and here we have two prior instances of harassment that aren't contested by the county in this case, that the employer, a reasonable jury could find were not effective, because indeed Ms. Mays was groped and harassed by the same inmate that the county knew of, but failed to prevent future conduct. So I want to go back to the hearsay ruling. It seems to me, from my perspective, that that seems to be, if you get that in, you can defeat summary judgment. If it wasn't admissible, I'm struggling here. Okay, and I think there's two reasons why it's admissible. The first is an officer's warning, and the fact that he's testifying that he warned, is not hearsay. It's something he has personal knowledge of. It's not that it's asserted for the truth of what he heard, but that he's testifying about the fact that he warned, and the reason why he warned. So specifically, what is the testimony that you're referring to, the warning? What is it? Officer Cessenia testified in his deposition that he warned nurses the very day Ms. Mays was attacked, that Jackson is dangerous. He has a history of grabbing females. Okay, so now who is that in the deposition testimony? I can get you the excerpt of record site on rebuttal. I have it. Well, I've got some sites of Cessenia, and it isn't quite as clear, I think, as what you're saying. If you look at the record, I've got on ER 140 at 18-2-7. With respect to inmate Jackson, I don't know him very much. That's ER 139, and then he's a very, very, very, very, very, very, he also stated he had no independent recollection of Jackson. Then he goes, he didn't remember either Jackson's or Mays' names. He only remembered that there had been an incident when someone's crotch was grabbed. At one point during the deposition, he asked whether he could see a picture of Mays or make sure he was thinking about the right nurse. Although Jackson and Mays' names appeared on the February 2008 report, he had taken their names from a 2008 email written by his supervisor. Cessenia had no idea how many times Jackson might have physically harassed employees. He just remembered being alerted at roll call that Jackson was a dangerous inmate. He did not identify who had alerted him anywhere in the deposition. Cessenia stated he remembered warning Mays be careful before she went to treat Jackson. However, he also acknowledged that it was possible that he did not specifically warn her prior to her contact with Jackson and that he started escorting nurses after Mays' encounter with Jackson. That's sort of what I see as testimony. It's ER, I think, 139 to 143 or something. But he does testify that he recalls warning people. And we have a question of fact whether, Ms. Mays certainly disputes that she ever received that warning, but the testimony is, I warned people. And that's from a pass-on, which is the shift change procedure where corrections officers are alerted to dangerous inmates for a period of three days. The additional problem is this is coming some period after the operative events. I mean, it's not as if this came to light at the time. Are you referring to the officer's report when he recorded that? Right. And his testimony. And his testimony, which is a few years after the incident. And that's correct, Your Honor. I think that would go to wait and not admissibility. I mean, ideally you'd have this officer who was on shift at the time write up an incident report, and that didn't happen in this instance. But he did write up an officer's report on the instruction of his sergeant, pursuant to a duty in an official King County farm. Well, why wouldn't it be inadmissible, as you're saying? The officer's report would be an admission because he's an agent of the county. He's an employee. He's writing it pursuant to his duty. So it would come in as an exception. What case authority would make this an admission of King County four years after the fact? Well, it's Evidence Rule 801D2, subsection D, large case D. What does it say? That would constitute an admission. And I can cite you the rule. It's offered against the party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship. I don't know that that helps you a lot. Well, the officer is an employee of the county, and he's testified under oath in his deposition. And he said it wasn't his responsibility to even make the report. He said it was the responsibility of Ms. Jackson to make, I mean, Ms. Mays to make the report regarding the incident. So how can this be an admission if it wasn't within the scope of his duties? He was later instructed in an email from his sergeant to draft up the report, and his sergeant identifies this as a potential mistake and that he should have done an incident report. His sergeant instructed him to do that in an email, and he complies. So those are the two reasons. I think we've covered both of them. First, that what he warns other staff would not be hearsay. And second, that it's an exception as an admission. Well, the other problem with it being an admission is it's hearsay on hearsay, because he says he relied on information from a jail supervisor. So it's not his admission, even. It's an admission from somebody he identifies as being a jail supervisor without a name. Right, but Officer Sassenia's testimony himself would not be hearsay within hearsay. I still think that relaying what a supervisor said is an admission, because it's a statement of the county. And if we don't have employees speaking for the county, I don't know who is. And I'm just going to turn really briefly. Actually, I'm going to reserve my remaining 30 seconds. All right. Thanks. May it please the Court. Good morning. My name is Del Colder. I represent King County in this matter. This Court should affirm the District Court's dismissal of Ms. May's hostile work environment claim, because she failed to put forward any admissible, competent evidence that King County ratified the assaultive behavior of inmate Jackson. Alternatively, and in addition, this Court should affirm the District Court's dismissal. Is that solely determinative, whether there's a hostile? I mean, the hostile environment is a little bit broader than just what they did, right? I think Judge Kodahe was saying something about the Court seemed to just be focused on that they didn't ratify the behavior. I think that's in line with Brooks. I think it is relevant to the objective perception of the person experiencing the harassment, because part of what goes into that inquiry is, how is your employer responding? Is the employer taking appropriate action? Well, what if, okay, you know, obviously it is different than the workplace, and we can't just, they're already in jail for something else. But I'm going to have to assume someone could state a hostile work environment involving having to contact with inmates because the county didn't appropriately, I don't know, appropriately ensure an environment where they could go do their job without being groped, right? Absolutely. I think Freytag makes that clear. I think the position of the Attorney General's case was a little bit extreme. I do think a jail environment... And it doesn't really go with, you know, when you sign up, you don't completely have a waiver of every inmate can grope me when I go do my job. And that's not the county's position in this case. We do believe jails are different than other workplaces. We don't believe, however, that, you know, it's a Title VII free zone, or that the county isn't held to account for taking reasonable steps to prevent inmates from misbehaving. But obviously... Is there any testimony here about what the county could do under these circumstances? You know, your opponent said, well, I should have provided an escort for this nurse right off the bat instead of waiting until later on. Is that a feasible thing to do? Well, I don't... Is it something they ordinarily do? Or is that an extraordinary thing? Or what? How does it all fit into that? It would be an unusual measure. I don't think the record was developed below on that by the plaintiff regarding other measures that were available. There is some evidence in the record that immediately following the assault in this maze, there were some escorts that were instituted. But really... Well, eventually they did. But I just have no idea whether they, you know, do that routinely if anybody gets out of line or what happens. You know, the largest county jail north of San Francisco on the west coast, they have about 55,000 inmates booked through the jail. Some of them are repeat bookings in an average year. So there are a lot of people coming in and out. It's a 24-7 operation with multiple shifts. There's a budget crisis at the county, and we're certainly not alone in that. Okay. But as a matter... For you to prevail at this point, as a matter of law, the county had to have done enough to deal with Mr. Jackson. And Mr. Jackson did do this before. Put Brooks aside, what was in her mind at the time. He had harassed females before, and there was earlier disciplinary measures, right? It's true, but the level of harassment was different. And I think that the county's response, the record's very clear, the county responded appropriately. This is the opposite of the complaints by the female staff. What about... Why isn't it maybe a tribal issue that it just wasn't enough to give him what... He had disciplinary proceedings, and he got some privileges taken away, or... And when was that? And so, I mean, essentially, for you to prevail as a matter of law, we're going to have to look at everything that the jail did with regard to Mr. Jackson. And then, you know, other people would look at that as a matter of law. That's enough. Well, we don't think a reasonable jury could conclude that in this case. There were no other assaults. There's just no evidence of that. No admissible evidence, certainly. There were some inappropriate comments made. There was an inappropriate exposure several years before the incident. He got five days of disciplinary deadlock as a result of that. No evidence that there was any reoccurrence until about a month before the incident with Ms. Mays when he did make sexually inappropriate comments. There was no touching involved in that. No crime committed, nothing that could have been referred for criminal prosecution. He got the maximum possible punishment under the jail's administrative rules, 10 days of deadlock, 30 days loss of good time. Now, Ms. Mays' theory is that there was another assault or another touching or grabbing that occurred in the two weeks before May 10th, 2004. She does not have evidence for that. She has no evidence to support that other than hearsay evidence, which is not on her memory of what she says unidentified county employees told her and on Officer Circinia's belated report that was put together almost four years after the fact. What's your view if we were to agree, and I'm not saying, I'm just giving you the hypo, if we were to conclude that the district court was wrong in excluding that, do you still prevail? Even with that being admitted, or is there then a triable issue? If the court finds that the district court abused its discretion by excluding it, I think it's a closer issue at that point. Well, we know it's closer, but is it? Well, I think there's a piece that's missing from that. The plaintiff here, Ms. Mays, is asking the court to make all sorts of assumptions, even if an assault or a touching took place in the two weeks before the assault on Ms. Mays, and that involved another county employee. For the liability to attach, Ms. Mays would need to be able to show that the county did not take appropriate measured action to respond to the touching by Mr. Jackson. And, of course, there's no evidence that the county responded here, because there's no evidence that a touching occurred. So we're making more and more assumptions and filling in events that essentially didn't happen. There's no evidence of a report. There's no evidence that management was aware, on and on and on. Correct. Correct. And they're trying to write that in based on Officer Circinia's testimony about having heard something at roll call. He could very well be remembering what happened. He could very well be remembering the next roll call after Ms. Mays was touched when an announcement may have been made about this. I'd also point out the log book, which is part of the record and was an exhibit in Mr. Officer Circinia's deposition. It's in the Cathy T. coming in for med passes. In other words, to do medical procedures or to distribute medicine. And it is conceivable, I don't think the court needs to or should reach the issue, but it's certainly conceivable that Officer Circinia was remembering, warning another Cathy after the groping incident happened with Ms. Mays, the plaintiff in this case, in any event. If Officer Circinia's report is not admissible, what does the plaintiff have in terms of giving all inferences? You know, make the plaintiff's best argument for me. What does the plaintiff have? I think the court has made the plaintiff's best argument, which is that here you have somebody who did engage in some inappropriate behavior previously. Did the district court here that there was a hostile work environment and rely exclusively on the response? That's a great question, Your Honor. I don't know. I read the opinion several times last night trying to find that. I think the district court glossed over that issue and went to, not inappropriately, went to the issue of ratification. Ratification in and of itself is a sufficient basis to hold that the county is not liable. I don't think the court ever squarely addressed the issue of whether there was an objectively hostile work environment. And I would be speculating as to the reasons. So I don't really know. I do believe under these circumstances that the county has a reasonable position that this was not, this was clearly inappropriate. But the county's response was about as good as it gets. They administratively punished him, they instituted an escort procedure, and they brought criminal charges for which he was convicted. And he received 22 months of prison time. This is what you want jails to be doing when inmates act out against female staff or any staff member. They did what they were supposed to do, and they should not be held liable as a result of that. Counsel, what's your response to opposing counsel's argument that the statements by Officer Circinio were admissions? I just don't think there's a showing here that he's a speaking agent for the county. I mean, he was a corrections officer. I think the record shows that he did not feel that he had to write a report of the incident at the time. He didn't witness what happened. According to Ms. Mays' own statement, that was because her medical cart was obstructing in view. He stated both in his deposition and I did not, that his supervisor at the time, Sgt. Brenner, told him he didn't need to write a report, and that Ms. Mays was the one who had to submit a report. I do believe that opposing counsel has, I think, made a mistake with regard to the record in indicating that Michael Myers, in an email in 2008, instructed Officer Circinio to write a report belatedly almost four years later. I would note that that email is in the record at 153, and there is no directive in there. This is a paramilitary organization. If they're going to make a directive, they make it very clear that they're making a directive. There was a suggestion, in hindsight, given the emphasis on the PREA and the DOJ investigation that had occurred at the King County Jail, that he might have been good for them to do that, but it was a suggestion. It was not a directive. Human memory is a funny thing. To say four years later what you did or didn't do on an event that you didn't document at the time, it's inherently suspect, and that is why we don't let evidence like that in, and that's why we have the hearsay rule, so that we're not relying on this sort of down the line. They just have not come forward with evidence here that there was any kind of touching or assault that occurred by Mr. Jackson toward another employee during the two weeks preceding May 10, 2004. Secondly, they have no evidence that the county failed to take any action. Of course, I can't sit here and prove a negative, but we have no record that an assault took place. We also have no record that we did take any countermeasures as a result of it. That's because I don't believe an assault did take place. I think that this is based in part on this maze's misperception of what happened. That would be inconsistent with the history of the organization as well, because the history shows that there's been discipline when there have been reported incidents. I think that's an excellent point, Your Honor. Why would the county not have documented this appropriately? They documented it in 2003. They documented it a month before. They documented their response to the touching of Ms. Mays. If there had been a touching two weeks before, why wouldn't it have been reported? The evidence is that employees report when their personal space is violated or when they've been subject to disrespectful behavior by the inmates, and that organization responds appropriately through infractions and, in the case of Ms. Mays, also by referring it for criminal charges. Essentially, the plaintiff is asking the court to speculate that a number of things happened for which there is no competent admissible evidence that they did in fact happen. There's nothing further from the court. I've reserved the remainder of my time. Well, you can't reserve. You're done. I'm done. Okay. Fair enough, Your Honor. Thank you. All right. Rebuttal. Your Honors, I'd like to point to the record at 150 in which the officer writes his report, and in the first sentence he says, I'm writing this report at the request of Sergeant Myers. I misstated it. It was at 153 in an email, but it's actually in his report. Yeah, but the email said in the future it might be. I mean, this is his interpretation that Myers was requesting a report, but actually Myers said in the future it might be better practice to document stuff like that. And we don't know if there's other conversations that happened, but we do know that the record supports that he was writing it pursuant to a duty, because he says, I am writing this report at the request of Sergeant Myers. A belated duty, I guess. I just want to make. Your time is up. Do you want to make a final point? I would like to make a final point, which is that the appellee, the county, has consistently said in his argument that we're asking the court to make assumptions. What we're asking for is the court to make the reasonable inferences that the district court failed to make. Thank you. I disagree. Thank you. Okay. Thank you. Thank you to both counsel for your arguments. Well done. That concludes the calendar for the day, and we are in recess until 9 o'clock a.m. tomorrow morning.
judges: Cudahy, Rawlinson, Callahan